## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| JAMES MURPHY and LORRAINE MURPHY: | |
| : | CIVIL ACTION NOs. 17-3898 and 17-3910 |
| Plaintiffs, : | |
| : | Asbestos Case |
| vs. : | |
| : | |
| ASBESTOS CORPORATION LIMITED, *et* : | AMENDED COMPLAINT AND |
| *al.* : | JURY TRIAL DEMANDED |
| : | |
| : | |
| Defendants. : | |

FILED

SEP 0 8 2017

KATE BARKMAN, Clerk
By_____Dep. Clerk

Plaintiffs, by way of Amended Complaint against Defendants, upon information and belief allege as follows:

### INTRODUCTION

1.    This is a personal injury action on behalf of James Murphy and his wife Lorraine Murphy against Defendants, the manufacturers, suppliers, and distributors of asbestos and/or asbestos-containing products, to which Mr. Murphy was exposed while serving in the Navy aboard the USS *Samuel B. Roberts* from 1954-1956.

2.    When Defendants mined, milled, produced, processed, compounded, converted, sold, merchandised, distributed, supplied and/or installed their asbestos products, Defendants knew, or in the exercise of reasonable care should have known, that their asbestos products were defective and ultra-hazardous because the use of these products would cause dust and fibers to be released into the air that would create a dangerous and unreasonable risk of injury.

SEP - 8 2017

3.     Even still, Defendants failed to take reasonable precautions or exercise reasonable care to warn James Murphy of the risks, dangers, and harm to which he would be exposed by inhaling or ingesting the asbestos dust and fibers dispersed therefrom during the ordinary and foreseeable use of the products.

4.     As a result of Defendants' acts and omissions, James Murphy was needlessly exposed to asbestos — a known carcinogen — that caused him to contract mesothelioma, a disease caused only by exposure to asbestos, for which there is no permanent cure.

5.     James Murphy's mesothelioma has caused and will continue to cause him to suffer severe, permanent, and disabling personal injuries. Mr. and Mrs. Murphy have expended great sums of money for medical care and treatment related to his injuries.

6.     As a consequence of the injuries to James Murphy, Lorraine Murphy, his lawful wife, has suffered loss of consortium, companionship, services, society and support.

## PARTIES – PLAINTIFFS

7.     Plaintiff James Murphy resides at 153 Center Street, Hughestown, Pennsylvania.

8.     Plaintiff Lorraine Murphy resides at 153 Center Street, Hughestown, Pennsylvania.

9.     On or about May 8, 2017, James Murphy was diagnosed by the Pathology Department at Wilkes-Barre General Hospital with mesothelioma.

10.     James Murphy served in the Navy as a machinist's mate, third class aboard the USS *Samuel B. Roberts* from 1954 through 1956. While serving he was exposed to dust from asbestos and asbestos-containing products. As a direct result of James Murphy's contact with asbestos, he contracted mesothelioma.

11.     James Murphy testified at a deposition in this matter on September 5, 2017 and Defendants had a full and fair opportunity to question him.

2

## PARTIES – DEFENDANTS

12.     Defendants are corporations organized under the laws of the various states of the United States of America or of the Dominion of Canada that were and/or are doing business in, among other places, the Commonwealth of Pennsylvania and the State of New Jersey. Said Defendants mined, milled, manufactured, sold, supplied, purchased, marketed, installed and/or removed asbestos, or asbestos-containing products, to which James Murphy was exposed.

13.     Defendant, AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to Buffalo Pumps, Inc., individually and as successor-in-interest to Buffalo Forge Company, is a corporation duly organized and existing under the laws of the State of Delaware, with its registered agent address as Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. At all times relevant hereto, Defendant AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to Buffalo Pumps, Inc., individually and as successor-in-interest to Buffalo Forge Company, manufactured, produced, supplied, sold, distributed and/or used, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

14.     Defendant ASBESTOS CORPORATION LIMITED is a company organized and existing under the laws of Canada with its registered agent address as 840 Ouellet Boulevard, West Quebec, Canada G6G 7A5. At all times relevant hereto, ASBESTOS CORPORATION LIMITED manufactured, produced, supplied, sold, distributed, marketed, installed and/or used, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

3

15.     Defendant, BLACKMER PUMP CO., individually and d/b/a Blackmer, a Dover Corporation, is a corporation duly organized and existing under the laws of the State of Michigan, with its registered agent address as c/o World Headquarters, 1809 Century Avenue, S.W., Grand Rapids, MI 49503.  At all times material hereto, Defendant BLACKMER PUMP CO., individually and d/b/a Blackmer, a Dover Corporation, manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

16.     Defendant, CARRIER CORPORATION, is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, with its registered agent address as c/o CT Corporation System, 1635 Market Street, Philadelphia, Pennsylvania 19103. At all times relevant hereto, Defendant CARRIER CORPORATION, manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

17.     Defendant CBS CORP. A DELAWARE CORPORATION, f/k/a VIACOM, INC., successor by merger to CBS CORP., A PENNSYLVANIA CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORP., is a corporation duly organized and existing under the laws of the State of Delaware, with its registered agent address as Corporation Service Company, 2595 Interstate Drive, Suite 103, Harrisburg, Pennsylvania 17110.  Defendant CBS CORP. A DELAWARE CORPORATION, f/k/a VIACOM, INC., successor by merger to CBS CORP., A PENNSYLVANIA CORPORATION, F/K/A WESTINGHOUSE ELECTRIC CORP., manufactured, produced, supplied, sold, and/or distributed,

4

either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

18.     Defendant, COPES-VULCAN, INC., is a corporation duly organized and existing under the laws of the State of Delaware, with its registered agent address c/o Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801. At all times relevant hereto, Defendant COPES-VULCAN, INC., manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

19.     Defendant, CRANE CO., individually and as Successor to and/or d/b/a National U.S. Radiator Division of Crane National Boiler; Thatcher Boiler, a division of Crane Co., is a corporation duly organized and existing under the laws of the State of New Jersey, with its registered agent address c/o Corporation Trust Company, 820 Bear Tavern Rd., West Trenton, NJ 08628. At all times relevant hereto, Defendant CRANE CO., individually and as Successor to and/or d/b/a National U.S. Radiator Division of Crane National Boiler; Thatcher Boiler, a division of Crane Co., manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

20.     Defendant EATON CORPORATION, f/k/a CUTLER HAMMER, is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with its registered agent

5

address as CT Corporation System, 116 Pine Street, Suite 320 Harrisburg, Pennsylvania 17101. Defendant EATON CORPORATION, f/k/a CUTLER HAMMER manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products electrical products and/or other steam-driven components to which James Murphy was exposed.

21.     Defendant FOSTER WHEELER CORPORATION, is a corporation duly organized and existing under the laws of the State of New Jersey with its registered agent address as Perryville Corporate Park, Clinton, New Jersey 08809. Defendant FOSTER WHEELER CORPORATION manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

22.     Defendant GENERAL ELECTRIC COMPANY is a corporation duly organized and existing under the laws of the State of New York with its registered agent address as c/o Corporation Trust Company, 820 Bear Tavern Road Ewing, New Jersey 08628. Defendant GENERAL ELECTRIC COMPANY manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

23.     Defendant GOULDS PUMPS, INC. is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania with its registered agent address as c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101. Defendant GOULDS PUMPS,

INC. manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

24.    Defendant, IMO INDUSTRIES, INC., individually and as successor-in-interest to, and formerly known as, DeLaval Turbine, Inc., Transamerica DeLaval and IMO DeLaval, is a corporation duly organized and existing under the laws of the State of New Jersey, with its registered agent address as 200 American Metro Boulevard, Suite 111, Hamilton Township, NJ 08619. At all times relevant hereto, Defendant IMO INDUSTRIES, INC., individually and as successor-in-interest to, and formerly known as, DeLaval Turbine, Inc., Transamerica DeLaval and IMO DeLaval, manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

25.    Defendant, INGERSOLL-RAND COMPANY, is a corporation duly organized and existing under the laws of the State of New Jersey, with its registered agent address as CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101.  At all times relevant hereto, Defendant INGERSOLL-RAND COMPANY, manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

26.     Defendant METROPOLITAN LIFE INSURANCE CO. is a company organized and existing under the laws of the State of New Jersey, with its registered agent address as CT Corporation System, 111 Eighth Ave., New York, New York 10011. At all times relevant hereto, METROPOLITAN LIFE INSURANCE CO. manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

27.     Defendant, PATTERSON PUMP CO. is a company organized and existing under the laws of the State of Georgia, with its registered agent address McClure, Ramsay, Dickerson & Escoe, LLP, 38 Falls Road, Toccoa, GA 30577. At all times relevant hereto, PATTERSON PUMP CO. manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

28.     Defendant, ROCKWELL AUTOMATION, INC., Individually and as successor to ALLEN-BRADLEY COMPANY and RELIANCE ELECTRIC COMPANY, is a company organized and existing under the laws of the State of Delaware, with its registered agent address as c/o The Corporation Trust Company, Corporation Trust Center, 1209 Orange St., Wilmington, Delaware 19801. At all times relevant hereto, ROCKWELL AUTOMATION, INC., Individually and as successor by merger to ALLEN-BRADLEY COMPANY and RELIANCE ELECTRIC COMPANY, manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air

8

compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

29.     Defendant SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D CO. is a company organized and existing under the laws of the State of Delaware, with its registered agent address as c/o The Prentice Hall Corp. System, 830 Bear Tavern Road Ewing, New Jersey 08628. At all times relevant hereto, SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D CO. manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

30.     Defendant SIEMENS ENERGY & AUTOMATION, INC., f/k/a FURNAS ELECTRIC CO. is a company organized and existing under the laws of the State of Delaware, with its registered agent address as c/o The Corporation Trust Company, 820 Bear Tavern Road Ewing, New Jersey 08628. At all times relevant hereto, SIEMENS ENERGY & AUTOMATION, INC., f/k/a FURNAS ELECTRIC CO. manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

31.     Defendant UNION CARBIDE CORPORATION, is a company organized and existing under the laws of the State of New York with its registered agent address as c/o The Corporation Trust Company, 820 Bear Tavern Road, Ewing, New Jersey 08628. At all times relevant hereto, UNION CARBIDE CORPORATION, manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines,

engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

32.    Defendant WARREN PUMPS, is a company organized and existing under the laws of the Commonwealth of Pennsylvania with its registered agent address as c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101. At all times relevant hereto, WARREN PUMPS manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

33.    Defendant, 3-M COMPANY, is a corporation duly organized and existing under the laws of the Commonwealth of Pennsylvania, with its registered agent address as c/o CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, Pennsylvania 17101. At all times relevant hereto, Defendant 3-M COMPANY, manufactured, produced, supplied, sold, and/or distributed, either directly or indirectly, to the Navy, asbestos products, including but not limited to, asbestos-containing turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, insulation, steam pipes, electrical products and/or other steam-driven components to which James Murphy was exposed.

34.    The term "Defendants" is used hereafter to refer to all of the entities named above.

## JURISDICTION AND VENUE

35.    Defendants have removed this matter to this Court claiming jurisdiction exists under 28 U.S.C. §§ 1442(a)(1) and 1446.

36.    Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1446(b) because this Court is located in the federal judicial district that includes the Court of Common Pleas for Philadelphia County, Pennsylvania, where Plaintiffs filed their original Complaint.

10

## FACTUAL ALLEGATIONS

37.     Upon information and belief, Defendants at all times relevant hereto were engaged in the mining, milling, manufacturing, selling, supplying, distributing, producing, purchasing, marketing, installing and/or removal of asbestos or asbestos-containing products aboard the USS *Samuel B. Roberts*.

38.     Plaintiff James Murphy served in the United States Navy as a machinist's mate, third class aboard the USS *Samuel B. Roberts* from 1954 through 1956, a position with duties and responsibilities to maintain and repair various turbines, engines, generators, auxiliary generators, air compressors, pumps, gaskets, compressors, insulation, steam pipes, electrical products and other steam-driven components. Further, James Murphy worked around other workers on the ship whose responsibilities included repairing electrical products and other types of products. While serving he was exposed to dust from asbestos and asbestos-containing products. The nature of James Murphy's work exposed him to several types of asbestos products made with fiber mined, milled and supplied by Defendants to product manufacturers. Further, Defendants designed, assembled, selected component parts, manufactured and/or supplied asbestos-containing products to be used aboard the USS *Samuel B. Roberts*.

39.     James Murphy worked all over the USS *Samuel B. Roberts* and in all parts of the ship, including but not limited to engine rooms and boiler rooms.

40.     As a direct result of James Murphy's contact with asbestos while he was aboard the USS *Samuel B. Roberts*, he contracted mesothelioma.

41.     James Murphy's maintenance and repair work included the removal, maintenance and replacement of asbestos-containing pipe insulation on high temperature steam-lines connected to boilers. This process created significant dust and fibers that Plaintiff ingested and inhaled.

11

42.     Upon information and belief, larger equipment onboard the USS *Samuel B. Roberts*, such as boilers, pumps, blowers, compressors, engines and turbines were covered with high temperature asbestos-containing insulation. James Murphy would tear off, repair, and/or replace this insulation as needed. This process created significant dust and fibers that Plaintiff ingested and inhaled.

43.     Upon information and belief, in repairing boilers onboard the USS *Samuel B. Roberts*, James Murphy would, among other jobs, remove asbestos-containing firebox refractory. To remove the refractory, Plaintiff would use a chisel. Then Plaintiff would replace the refractory with high temperature insulation board and high temperature insulation block, with an outer layer of high temperature firebrick and high temperature castable. Upon information and belief, all of these components contained asbestos. The process described above created significant dust and fibers that Plaintiff ingested and inhaled.

44.     Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy changed and/or otherwise repaired asbestos-containing gaskets, valves, and packing and pumps. These processes created significant dust and fibers that Plaintiff ingested and inhaled.

45.     Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy operated, maintained, and/or otherwise repaired gaskets, valves, packing and/or pumps manufactured by Defendant CRANE CO., individually and as Successor to and/or d/b/a National U.S. Radiator Division of Crane National Boiler; Thatcher Boiler, a division of Crane Co., which created asbestos-containing dust and fibers that Plaintiff inhaled and ingested.

46.     Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy operated, maintained, and/or otherwise repaired turbines manufactured by Defendant CBS CORP. A DELAWARE CORPORATION, f/k/a VIACOM, INC., successor by merger to CBS CORP., A PENNSYLVANIA CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORP, Defendant

12

GENERAL ELECTRIC COMPANY and/or Defendant IMO INDUSTRIES, INC., which created asbestos-containing dust and fibers that Plaintiff inhaled and ingested.

47.    Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy operated, maintained, and/or otherwise repaired blowers manufactured by Defendant CBS CORP. A DELAWARE CORPORATION, f/k/a VIACOM, INC., successor by merger to CBS CORP., A PENNSYLVANIA CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORP., which created asbestos-containing dust and fibers that Plaintiff inhaled and ingested.

48.    Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy operated, maintained, and/or otherwise repaired boilers manufactured by Defendant FOSTER WHEELER CORPORATION, which created asbestos-containing dust and fibers that Plaintiff inhaled and ingested.

49.    Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy operated, maintained, and/or otherwise repaired blowers manufactured by Defendant COPES-VULCAN, INC., which created asbestos-containing dust and fibers that Plaintiff inhaled and ingested.

50.    Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy operated, maintained, and/or otherwise repaired condensers manufactured by Defendant CARRIER CORPORATION, which created asbestos-containing dust and fibers that Plaintiff inhaled and ingested.

51.    Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy operated, maintained and/or otherwise repaired pumps manufactured by Defendant AIR & LIQUID SYSTEMS CORPORATION, as successor by merger to Buffalo Pumps, Inc., individually and as successor-in-interest to Buffalo Forge Company, Defendant BLACKMER PUMP CO., Defendant

GOULDS PUMPS, INC., Defendant IMO INDUSTRIES, INC., Defendant PATTERSON PUMP CO., Defendant INGERSOLL-RAND COMPANY and/or Defendant WARREN PUMPS, which created asbestos-containing dust and fibers that Plaintiff inhaled and ingested.

52. Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy operated, maintained and/or otherwise repaired compressors manufactured by Defendant INGERSOLL-RAND COMPANY, which created asbestos-containing dust and fibers that Plaintiff inhaled and ingested.

53. Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy repaired and maintained and/or worked near workers who operated, repaired and/or maintained electrical products manufactured by Defendant EATON CORPORATION, f/k/a CUTLER HAMMER, Defendant ROCKWELL AUTOMATION, INC., Individually and as successor to ALLEN-BRADLEY COMPANY and RELIANCE ELECTRIC COMPANY, Defendant SCHNEIDER ELECTRIC USA, INC., f/k/a SQUARE D CO., Defendant SIEMENS ENERGY & AUTOMATION, INC., f/k/a FURNAS ELECTRIC CO., Defendant UNION CARBIDE CORPORATION, which created asbestos-containing dust and fibers that Plaintiff inhaled and ingested.

54. Upon information and belief, during his service onboard the USS *Samuel B. Roberts*, James Murphy used and/or worked near workers who used tapes, sealants and/or caulk manufactured by Defendant 3-M COMPANY, which created asbestos-containing dust and fibers that Plaintiff inhaled and ingested.

55. Upon information and belief, Defendant ASBESTOS CORPORATION LIMITED supplied asbestos fibers to be used in various pipe insulations aboard the USS *Samuel B. Roberts*.

56. Upon information and belief, Defendant METROPOLITAN LIFE INSURANCE CO. contracted with one or more pipe insulation companies, including but not limited to Johns Manville, to

14

provide insurance coverage for Johns Manville asbestos-containing products aboard the USS *Samuel B. Roberts*. Despite knowing the dangers and health hazards associated with asbestos exposure, Defendant METROPOLITAN LIFE INSURANCE CO. did nothing to warn the public, James Murphy or persons like him of the dangers and health hazards they faced by being exposed to asbestos and failed to provide or instruct as to proper safety protection.

57.     Throughout James Murphy's naval service, each Defendant had the option and opportunity to substitute non-asbestos containing materials for those that contain asbestos, or in the alternative, warn Plaintiff about the known dangers of its product, but failed to do so.

58.Indeed, Defendants failed to take reasonable precautions, or exercise reasonable care, to warn Plaintiff adequately of the risks, dangers, and harm to which he would be exposed in using and handling Defendants' asbestos-containing products, and by inhaling or ingesting the asbestos dust and fibers dispersed therefrom during the ordinary and foreseeable use of the products.

59.     Each Defendant failed to adequately test its own products for the amount of asbestos containing dust and asbestos fibers that would be released, and to which Plaintiff would be exposed, during the ordinary and foreseeable use of these products.

60.     As a result of Defendants' acts and omissions, James Murphy was exposed to Defendants' asbestos-containing products that has proximately caused him to contract mesothelioma, a disease caused only by exposure to asbestos, for which there is no permanent cure.

### FIRST COUNT

61.     Plaintiffs repeat the prior allegations of this Amended Complaint.

62.     Defendants, at all times material hereto, acted through their respective officers, employees and agents, who in turn were acting within the scope of their authority and employment in furtherance of the business of Defendants.

63.     Defendants were engaged, directly or indirectly, in the mining, milling, producing, processing, compounding, converting, selling, merchandising, supplying, distributing or installing of asbestos-containing products and raw asbestos fiber of various kinds and grades, or of products, including equipment, which Defendants knew or should have foreseen would be used with asbestos containing products and/or raw asbestos fiber (hereinafter collectively referred to as "asbestos products").

64.     Defendants, directly or indirectly, caused their asbestos products to be used aboard the USS *Samuel B. Roberts*.

65.     Defendants knew or should have known that James Murphy and workers just like him were continuously working with and exposed to asbestos fibers and asbestos dust from their products, which were mined, manufactured, processed, imported, converted, compounded, and/or sold by these Defendants for use aboard the USS *Samuel B. Roberts*.

66.     James Murphy was exposed to, and came in contact with, Defendants' asbestos products and accordingly, the dust and fibers from these asbestos-containing products.

67.     As a direct and proximate result of James Murphy's inhalation and ingestion of dust particles and fibers from Defendants' asbestos products, James Murphy developed permanent and disabling personal injuries.

68.     During the time that Defendants mined, milled, manufactured, produced, processed, compounded, converted, sold, merchandised, distributed, supplied and installed their asbestos products, Defendants named herein were in possession of medical and scientific information that clearly indicated that asbestos, asbestos fibers, and asbestos dust are ultra-hazardous to health, defective, inherently dangerous materials, and otherwise harmful to James Murphy.

69.     Defendants knew, or in the exercise of reasonable care should have known, that the use of their asbestos products would cause asbestos dust and fibers to be released into the air and would

16

create dangerous and unreasonable risk of injury to the lungs, respiratory systems, larynx, stomach and other bodily organs of users of their products and to others breathing that air and coming into contact with that dust.

70.     James Murphy did not know the nature and extent of the injury that would result from contact with and exposure to Defendants' asbestos products or from the inhalation or ingestion of the asbestos dust and fibers.

71.     Defendants knew, or in the exercise of reasonable care should have known, that James Murphy would come into contact with, and be exposed to, their asbestos products and would inhale or ingest asbestos dust and fibers as a result of the ordinary and foreseeable use of Defendants' asbestos products.

72.     Despite the facts as set forth above, Defendants negligently, recklessly and intentionally:

(a)     processed, manufactured, packaged, distributed, used, delivered, and sold asbestos products for use aboard the USS *Samuel B. Roberts*, and in particular by James Murphy;

(b)     mined, milled, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed, installed or otherwise placed in the stream of commerce asbestos products which Defendants knew or in the exercise of reasonable care should have known, were defective, dangerous, ultra-hazardous and otherwise unreasonably harmful to James Murphy;

(c)     failed to render proper, adequate, and correct warnings and labels, advice, instructions, and information as to the use of and exposure to asbestos, its fibers and dusts, and failed to use reasonable care as to the same;

(d)     failed to take reasonable precautions or exercise reasonable care to warn James Murphy adequately of the risks, dangers and harm to which James Murphy would be

17

exposed to, or came into contact with, during the use and handling of Defendants' asbestos products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' asbestos products;

(e)     failed to provide proper and appropriate warnings and cautions to all users and bystanders of said asbestos products, fibers, and dusts, both actual and/or foreseeable, including James Murphy;

(f)     failed to provide information or reasonably safe and sufficient safeguards, wearing apparel, laundering services, proper equipment and appliances necessary to protect James Murphy from being injured, poisoned, disabled, killed, or otherwise harmed by using, handling, coming into contact with, and being exposed to Defendants' asbestos products, or by inhalation or ingestion of the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' asbestos products;

(g)     failed to package their asbestos products with appropriate warnings that would assure James Murphy would not come into contact with or be exposed to the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' asbestos products;

(h)     failed to advise James Murphy of the necessity to adopt and enforce a safe, sufficient and proper method and plan of working with, using, handling, coming into contact with and being exposed to Defendants' asbestos products so that James Murphy would not inhale or ingest the asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' asbestos products;

(i)     ignored and suppressed medical and scientific information, studies, tests, data and literature which Defendants acquired during the course of their normal business activities

18

concerning the risk of asbestosis, scarred lungs, cancer, mesothelioma, respiratory disorders, and other illnesses and diseases to workers such as James Murphy, and other persons similarly situated, who were exposed to Defendants' asbestos products;

(j)      disregarded medical and scientific information, studies, tests, data and literature concerning the causal relationship between the inhalation or ingestion of asbestos dust and fibers, and such diseases as asbestosis, mesothelioma, scarred lungs, cancer, respiratory disorders and other illnesses and diseases;

(k)      failed to investigate, impose, and comply with reasonable standards and regulations as to the safe use of and exposure to asbestos, asbestos fibers and asbestos dust.

(l)      exposed James Murphy, and other persons similarly situated, to the risk of developing asbestosis, mesothelioma, scarred lungs, cancer and other illnesses, all of which risks Defendants knew, or in the exercise of reasonable care should have known, were consequences of exposure to asbestos dust and fibers;

(m)      failed to seek substitute materials in lieu of the use of their asbestos;

(n)      failed to advise James Murphy, who Defendants knew, or in the exercise of reasonable care should have known, had been exposed to inhalation or ingestion of asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' asbestos products; to cease further uncontrolled or unprotected exposure to asbestos products and the inhalation or ingestion of asbestos dust and fibers and all other kinds of smoke, dusts, and fumes; to be examined by competent medical doctors to determine the nature and extent of any and all diseases caused by inhalation or ingestion of asbestos dust and fibers; and to receive medical care and treatment for such diseases; and

(o)     Defendants otherwise acted negligently, recklessly and with intentional disregard

for the welfare of James Murphy in the mining, milling, producing, processing,

compounding, converting, selling, merchandising, supplying, distributing, installing, or

otherwise placing in the stream of commerce their asbestos products.

73.     As a direct and proximate result of the aforementioned acts and/or omissions of

Defendants, James Murphy was exposed to and came in contact with Defendants' asbestos products and

inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of said

asbestos products. James Murphy developed mesothelioma as a direct and proximate result of said

exposure. James Murphy was caused to endure severe pain and suffering and mental anguish, was

required to expend great sums of money for medical care and treatment related thereto, was prevented

from pursuing her normal activities and employment, and was deprived of his ordinary pursuits and

enjoyments of life.

WHEREFORE, Plaintiffs demand judgment against Defendants jointly, severally, or in the

alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

## SECOND COUNT

74.     Plaintiffs repeat the prior allegations of this Amended Complaint.

75.     Defendants expressly or impliedly warranted that their asbestos products, which they

mined, milled, produced, compounded, converted, processed, sold, supplied, merchandised, distributed,

installed or otherwise placed in the stream of commerce were merchantable, reasonably fit for use, and

safe for their intended purposes.

76.     Defendants breached said warranties in that their asbestos products were defective,

ultrahazardous, dangerous, unfit for use, not merchantable, and not safe for their intended, ordinary and

foreseeable use and purpose.

20

77.     As a direct and proximate result of Defendants' breach of warranties, James Murphy was exposed to, and came in contact with, Defendants' asbestos products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of Defendants' asbestos products. James Murphy was caused to suffer the injuries, expenses and losses alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

## THIRD COUNT

78.     Plaintiffs repeat the prior allegations of this Amended Complaint.

79.     Defendants failed to disclose, and intentionally and negligently misrepresented to James Murphy the health risks created by the ordinary use of Defendants' asbestos products.

80.     James Murphy relied upon said representations, and such reliance was foreseeable to Defendants.

81.     As a result of Defendants' conduct, James Murphy came in contact with Defendants' asbestos products and inhaled or ingested asbestos dust and fibers from these products. James Murphy was caused to suffer the injuries, expenses and losses alleged in prior counts of this Amended Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

## FOURTH COUNT

82.     Plaintiffs repeat the prior allegations of this Amended Complaint.

83.     Defendants are strictly liable to James Murphy by reason of the following:

(a)     Defendants were engaged in the business of being miners, millers, manufacturers, producers, processors, sellers, suppliers, installers and distributors of their asbestos products;

21

(b)     Defendants knew, or had reason to know, that James Murphy and other persons similarly situated would be ultimate users or consumers of their asbestos products or would be exposed to their asbestos products;

(c)     Defendants sold or otherwise placed their asbestos products into the stream of commerce in a defective condition, unreasonably dangerous to James Murphy and other persons similarly situated;

(d)     Defendants, either impliedly or expressly represented that the asbestos products which they mined, milled, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed, installed or otherwise placed in the stream of commerce were not unreasonably dangerous to James Murphy and other persons similarly situated;

(e)     throughout the many years that James Murphy and other similarly situated persons were exposed to and/or used Defendants' asbestos products, said asbestos products reached the users and consumers without substantial change in the condition in which they were sold;

(f)     the ordinary and foreseeable use of Defendants' asbestos products constituted a dangerous and ultrahazardous activity and created an unreasonable risk of injury to users and bystanders;

(g)     Defendants' asbestos products were defective in that they were incapable of being made safe for their ordinary and intended use and purpose, and Defendants failed to give any warnings or instructions, or failed to give adequate or sufficient warnings or instructions about the risks, dangers and harm associated with the use of their asbestos products.

(h)     Defendant's asbestos products were defective in that the danger associated with the ordinary use of the products to users including James Murphy and others similarly situated, as average or ordinary consumers were unknown, unknowable and unacceptable to them.

(i)     The probability and seriousness of the harm caused by Defendant's asbestos products outweighed any burden and/or costs of taking precautions, including providing warnings as set forth herein.

84.     As a consequence of the defective condition of Defendants' asbestos products, James Murphy inhaled or ingested asbestos dust and fibers during ordinary and foreseeable use of those asbestos products. James Murphy was caused to suffer the injuries, expenses and losses alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

## FIFTH COUNT

85.     Plaintiffs repeat the prior allegations of this Amended Complaint.

86.     Defendants mined, milled, produced, processed, compounded, converted, sold, merchandised, supplied, distributed or installed all, or substantially all, of the asbestos products to which James Murphy was exposed.

87.     Defendants controlled the market, or a substantial portion of the market, from which the asbestos products which caused James Murphy's injuries emanated.

88.     Defendants collectively, through explicit agreement, tacit agreement, and conscious parallel behavior, controlled industry standards regarding the testing, manufacture, sale, distribution and

use of asbestos products and controlled the level of knowledge on the part of the public regarding the hazards of exposure to dust and fibers from Defendants' asbestos products.

89.     As a direct and proximate consequence of Defendants' acts and omissions, James Murphy was exposed to, and came in contact with, Defendants' asbestos products and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products. James Murphy was caused to suffer the injuries, expenses and losses alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally, in the alternative, or in proportion to Defendants' respective market shares, for compensatory damages, punitive damages and costs of suit.

## SIXTH COUNT

90.     Plaintiffs repeat the prior allegations of this Amended Complaint.

91.     Defendants acted in concert with each other, and with other members of the asbestos industry, through express agreement, implicit agreement, imitative behavior and conscious parallel behavior;

(a)     to withhold from users of their products, and from persons who Defendants knew or should have known would be exposed to their products, information regarding the health risks of breathing or ingesting asbestos dust and fibers;

(b)     to eliminate or prevent development of adequate procedures and tests relating to the health hazards of exposure to asbestos fibers and dust;

(c)     to assure that asbestos products became widely used in industries such as construction, shipbuilding, machine fabrication and similar such industries;

92.     Defendants knew that their activities were violative of common law standards of care and that their withholding of information, failure to develop tests and procedures, and promotion of

24

widespread use of asbestos products would expose persons such as James Murphy to unreasonable risk of bodily injury.

93.    Defendants nevertheless gave substantial assistance and encouragement to each other, and to other members of the asbestos industry, and assisted each other and other members of the asbestos industry in: withholding information regarding the dangers of asbestos; failing to develop tests and procedures to assure that users of asbestos would not be subjected to risk of injury; and promoting widespread use of products which Defendants knew would expose James Murphy to unreasonable risk of bodily injury.

94.    As a direct and proximate consequence of the concerted actions of Defendants, and other members of the asbestos industry, James Murphy was exposed to, and came in contact with, Defendants' asbestos products, and the asbestos products of others, and inhaled or ingested asbestos dust and fibers resulting from the ordinary and foreseeable use of said asbestos products. James Murphy was caused to suffer the injuries, expenses and losses alleged in prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

## SEVENTH COUNT

95.    Plaintiffs repeat the prior allegations of this Amended Complaint.

96.    The Defendants constitute all known, non-remote producers, manufacturers, suppliers, installers, and distributors of the asbestos products which could have caused James Murphy's injuries.

97.    Each of the Defendants, whether acting individually or in concert with others, violated a duty of care owed to James Murphy, or otherwise engaged in culpable activity against James Murphy. The acts and omissions of at least one of the Defendants caused James Murphy to sustain the injuries, losses and expenses alleged in prior counts of this Complaint.

25

98.     James Murphy in no respect can be blamed should Plaintiff be unable to establish which of the asbestos products caused the injuries complained of herein.

99.     The burden of proof in this matter thus should shift to Defendants to demonstrate that their respective conduct and their respective products could not have caused James Murphy's injuries, and, failing such proof, Defendants should be held jointly, severally or alternatively liable for James Murphy's injuries.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally or in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

## EIGHTH COUNT

100.    Plaintiffs repeat the prior allegations of this Amended Complaint.

101.    Defendants failed to warn James Murphy of the need to protect himself and avoid exposure to asbestos dust.

102.    As a direct and proximate result of Defendants' tortuous actions, James Murphy was caused to suffer the injuries, expenses and losses alleged in the prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally and in the alternative, for compensatory damages, punitive damages and costs of suit as provided by law.

## NINTH COUNT

103.    Plaintiffs repeat the prior allegations of this Amended Complaint.

104.    The failure of Defendants to warn as to the hazards of asbestos products mined, milled, manufactured, produced, processed, compounded, converted, sold, supplied, merchandised, distributed, installed or otherwise placed in the stream of commerce by them was and is contrary to social utility.

105.    The result of establishing a duty on Defendants for the harm caused by asbestos products that they mined, milled, manufactured, produced, processed, compounded, converted, sold, supplied,

merchandised, distributed, installed or otherwise placed in the stream of commerce is proper and is in the overall public interest.

106.    As a direct and proximate result of Defendants' tortuous actions, James Murphy was caused to suffer the injuries, expenses and losses alleged in the prior counts of this Complaint.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally and in the alternative, for compensatory damages, punitive damages and costs of suit.

## TENTH COUNT

107.    Plaintiffs repeat the prior allegations of this Amended Complaint.

108.    As a consequence of the injuries of her husband James Murphy caused by the Defendants' joint and/or several negligence, carelessness, and intentional and/or reckless disregard of the life and safety of James Murphy as described above, Plaintiff Lorraine Murphy has and will in the future suffer and be deprived of the services, society, companionship, comfort, support and conjugal fellowship of her husband.

WHEREFORE, Plaintiffs demand judgment against Defendants, jointly, severally and in the alternative, for compensatory damages, punitive damages and costs of suit.

COHEN, PLACITELLA & ROTH, P.C.
Attorneys for Plaintiff

By:    _____

Jon D. Rubinstein, Esquire
Identification No.: 318138
jrubinstein@cprlaw.com
2001 Market Street, Suite 2900
Philadelphia, Pennsylvania 19103
(215) 567-3500

Date: September 8, 2017

27

## **DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues.

COHEN, PLACITELLA & ROTH, P.C.
Attorneys for Plaintiff

By: _____
Jon D. Rubinstein, Esquire

Date:  September ___, 2017

## **CERTIFICATION** .

I hereby certify that to my knowledge the within matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, and that no other action or arbitration proceeding is contemplated with the exception of a possible workers' compensation claim. I have no knowledge at this time of any non-party who should be joined in this action.

COHEN, PLACITELLA & ROTH, P.C.
Attorneys for Plaintiff

By: _____
        Jon D. Rubinstein, Esquire

Dated: September _8_, 2017

29